No. 94-006

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

THE UNIVERSITY OF TULSA,

      Plaintiff and Appellant,

   v.

GERTRUDE M. SPIERLING,
f/k/a GERTRUDE H. GORE,
a/k/a TRUDI SPIERLING,

      Defendant and Respondent.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Julio K. Morales; Morales Law
            Office, Missoula, Montana

      For Respondent:

            Gertrude M. Spierling, Everett,
            Washington, Pro Se

FILED

Filed:   MAY 03 1994

CLERK

Submitted on Briefs: March 24, 1994

Decided: May 3, 1994

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Appellant University of Tulsa (University) appeals from the October 26, 1993 order of the Fourth Judicial District Court, Missoula County, granting respondent Gertrude M. Spierling's (Spierling's) motion to dismiss based on lack of personal jurisdiction. We affirm.

Since we conclude that the University's cause of action was properly dismissed for lack of personal jurisdiction, we do not address appellant's other arguments.

The facts of this case are not in dispute. In 1978 Spierling and her husband, James A. Gore (Gore), were divorced in Missoula County, Montana. In 1986, also in Missoula County, Spierling sued Gore for child support payments. After ordered by the court to make the payments, Gore requested his then-employer, the University, to deduct the payments from his paychecks. The first payment was deducted from Gore's October 31, 1986, paycheck and remitted to the Clerk of the Court of Missoula County (Clerk). Spierling moved to Washington state in 1988 where she continued to receive child support payments through the Clerk. The University continued to remit the child support payments to the Clerk after Gore had left the University's employment in June, 1990, specifically throughout the months of July, August, September and October, 1990. During those same months, Gore was also personally remitting child support payments to the Clerk. Spierling, therefore, was receiving twice the amount of child support payments actually due her during those four months. On June 3, 1993 the

2

University filed suit in Missoula County against Spierling to recover the excess payments.

Did the District Court err in granting Spierling's motion to dismiss based on lack of personal jurisdiction?

The District Court concluded that Spierling's receipt of child support payments from the Clerk did not constitute substantial contacts with the state of Montana to establish a basis for general personal jurisdiction over Spierling. In addition, the District Court concluded that the passive receipt of payments could not be analogized to any of the enumerated activities set out in Montana's long-arm statute. A trial court's conclusions of law will be upheld if we determine that its interpretation of the law was correct. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474-475, 803 P.2d 601, 603.

The University contends that Spierling's receipt of child support payments should be analogized to either a business transaction or an act resulting in accrual of a tort action in Montana.

Personal jurisdiction of a Montana court over a defendant is premised upon meeting the requirements of a two-part test. The first prong is set out in Rule 4B(1), M.R.Civ.P., Montana's long-arm statute, and the second part of the test is derived from the constitutional right of a defendant to due process.

Rule 4B(1), M.R.Civ.P., states in pertinent part:

> All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief

3

arising from the doing personally, through any employee, or through an agent, of any of the following acts:

(a) the transaction of any business within this state;

(b) the commission of any act which results in accrual within this state of a tort action. . . .

In Simmons Oil Corp. v. Holly Corp. (1990), 244 Mont. 75, 83, 796 P.2d 189, 194, we clarified the "found within" concept as applied to general personal jurisdiction:

> A party is "found within" the state if he or she is physically present in the state or if his or her contacts with the state are so pervasive that he or she may be deemed to be physically present there. A nonresident defendant that maintains "substantial" or "continuous and systematic" contacts with the forum state is found within the state and may be subject to that state's jurisdiction even if the cause of action is unrelated to the defendant's activities within the forum.

Simmons Oil, 796 P.2d at 194.

Since Spierling, a resident of Washington state, is obviously not "physically present" in Montana, we must determine whether she is "found within" Montana according to the definition of this concept as set out in Simmons Oil, 796 P.2d at 194. Spierling's only contact with the state of Montana was her receipt of child support payments through the Clerk in Missoula County. The Missoula County location was, in essence, a meeting point between the University, located in Tulsa, Oklahoma, and Spierling, who resided in Washington state. The payment was simply sent to the Montana location and subsequently forwarded on to Washington. We stated in Simmons Oil that in order to be "found within" a state, one's contacts must be pervasive, substantial, or continuous and systematic. 796 P.2d at 194. Spierling's contact with Montana was neither pervasive nor substantial. Although Spierling

4

systematically received the payments, the act of receiving payments is passive and is not actually a "contact" in the sense of conducting an activity. The facts in this case can be analogized to the facts in May v. Figgins (1980), 186 Mont. 383, 607 P.2d 1132. In May, defendant Figgins, a Montana road contractor with several employees, paid a total of thirty-five monthly employer contribution checks into the designated depository bank in Colorado. 607 P.2d. at 1133-34. We held that Figgins lacked sufficient "minimum contacts" to subject him to the jurisdiction of the Colorado court because the act of merely sending checks did not constitute purposeful availment of the privilege of conducting business within that forum. May, 607 P.2d. at 1138. Accordingly, in this case, we hold that the act of merely receiving checks is passive and insubstantial and does not subject Spierling to general personal jurisdiction.

The University contends that specific long-arm jurisdiction exists over Spierling under either subsection (a) or (b) of Rule 4B(1), M.R.Civ.P. As to subsection (a), the transacting of any business within this state, no authority exists to support the contention that the mere receipt of payments constitutes a business transaction. The University argues that the legal monetary obligation between Spierling and Gore is, in essence, a business transaction and that the parties chose Montana as the forum for the transaction. The University also contends that this so-called transaction is analogous to entering into a separation agreement. We disagree.

5

A business transaction, by definition, entails both communication and activity. The substantive divorce and child support issues were settled long ago between Spierling and Gore. Spierling's only remaining contact with Montana was receiving payments. She was not transacting any business.

The University contends, under Rule 4B(1)(b), M.R.Civ.P., that its cause of action is based in tort and that Spierling's receipt of child support payments in Washington resulted in the accrual of a tort within the state of Montana. In other words, the so-called tort arose out of Spierling's contacts with Montana.

Since none of the other criteria under Rule 4B(1), M.R.Civ.P. are applicable, we conclude that there is neither general personal jurisdiction over Spierling, nor specific (long-arm) personal jurisdiction over Spierling.

Because we hold that the state of Montana has no jurisdiction over Spierling, we do not reach the issue of whether Spierling's due process rights have been violated. Edsall Construction Co., Inc. v. Robinson (1991), 246 Mont. 378, 381, 804 P.2d 1039, 1041.

Affirmed.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_____
Justice

6

We concur:

_____
Chief Justice

_____

_____
Justices

7